UNITED STATES OF AMERICA *v.* ESTATE OF BER-
NICE PAUAHI BISHOP, deceased, and JOSEPH
O. CARTER *et al.*, Trustees under the will of BERNICE
PAUAHI BISHOP, deceased; OAHU RAILWAY
AND LAND COMPANY, LIMITED, a corporation;
THE DOWSETT COMPANY, LIMITED, a corporation;
THE HONOLULU SUGAR COMPANY, a corporation;
HONOLULU PLANTATION COMPANY, a corpora-
tion; CHOW AH FO, JOHN II ESTATE, LIMITED,
a corporation; WILLIAM G. IRWIN, OAHU SUGAR
COMPANY. LIMITED, a corporation; BISHOP &
COMPANY, a copartnership.

## DECIDED: JANUARY 25, 1902.

1.  In an action to condemn the leasehold interest of the defendant in
    561.2 acres of certain lands desired by the United States for the
    purposes of a Naval Station, where the jury returned a verdict al-
    lowing as damages the sum of $105,000 as the value of the lease-
    hold interest and improvements of defendant placed on said lands,
    upon a motion for a new trial made by plaintiff on the ground of
    an excessive valuation of said leasehold interest, *Held*, that the
    verdict was excessive and not in conformity with the weight of
    the evidence, the motion allowed and a new trial granted, unless
    the defendant elects to remit from the verdict the sum of $30,000
    and accept the sum of $75,000 in full compensation for all damages.
2.  Neither the Court nor the jury is bound by the opinions of expert
    witnesses unless they are in harmony with the weight of the testi-
    mony, but may consider them in connection with all the other facts
    in evidence.

EMINENT DOMAIN.    MOTION FOR NEW TRIAL.

*J. J. Dunne*, Assistant U. S. District Attorney, for plaintiff.
*Hatch & Silliman*, for defendant.

*Honolulu Plantation Company Case.*

ESTEE, J. This action was brought by the United States
to condemn the leasehold interest of the defendant, The Ho-

nolulu Plantation Company, in 561.2 acres of the lands desired by the United States, for a Naval Station.

A jury rendered a verdict therein on the 13th day of January, 1902, allowing $89,792 as the value of the leasehold in the 561.2 acres of land and the sum of $15,208 as the value of the improvements on the said land, making a total of $105,000 for the whole interest of the defendant in the said lands.

When the verdict was rendered, both counsel for plaintiff and defendant demanded a new trial, the plaintiff following up such a demand by the proper notice of intention to move for a new trial on a day certain. On that day, the matter was submitted on briefs to be filed.

The principal question involved in the motion in the judgment of the court is as to the verdict being excessive in amount, and not borne out by the weight of the evidence.

It is presumed the jury intended to be controlled in fixing the value of the leashold interest in the lands by a preponderance of the evidence, but in the judgment of the Court they failed to do this.

I will review a few of the estimates placed upon this leasehold interest. Mr. Archer, the Assessor of the Territory, and apparently a disinterested witness, placed a valuation of $25 per acre on the leasehold interest in this land. Mr. Herbert, to all intents an unwilling witness for the plaintiff, placed a valuation of from $75 to $100 per acre on the 342 acres shown by the evidence to have been cleared, and $25 per acre on the remaining 219 acres making an average of from $54 to $71 per acre on the whole 561.2 acres.

The testimony of Mr. Low, the manager of the defendant, and who represented the defendant throughout the trial, is glaringly and curiously inconsistent. He gave five different estimates, four of them widely varying, as to the value of this leasehold. In his sworn answer filed herein, he alleges that the defendant would be damaged by the taking of this land in the sum of $200,000 less $55,055 for alleged improvements on

said land, placing the valuation of the leasehold in the lands alone at $144,945.

On the trial the same witness testified that the whole interest of the defendant in the leasehold in these lands was worth $400,000.

He further testified that the valuation of the land was $300 per acre without the incumbrance of the leases but with the leases it would be worth $262 per acre, or about what the average of the estimates of Archer and Herbert would be in this case.

It further appears that in accordance with the laws of the territory, Mr. Low, acting as the manager of the defendant, made a return to the Assessor for the year 1900, in which he swore to the value of the leasehold interests of the defendant in 4720 acres of land, including the 561.2 in controversy, at $50,000, making an average value of about $15 per acre; while for the year 1901, he returned the same leasehold interests covering a trifle more acreage, 4774 acres, and including the same 561.2 acres in controversy, at $50,000 or an average of $17 per acre.

The evidence showed that a portion of these leased lands other than the 561.2 acres are now and for two years last past has been cultivated to cane and apparently is quite as valuable as the land in controversy.

It is further in evidence, that these tax returns are required by law to be and were sworn to by Mr. Low representing the defendant, and it is further required by said law that these returns shall represent the actual cash value of the property. It is presumed that the defendant through its Manager, Mr. Low, was swearing to the truth when these returns were made. And if so, how is this testimony on the trial to be reconciled therewith?

The compensation for this leasehold must be just, and it must be admitted that defendant should not have a judgment for more than its property is worth, and the value of the property to be taken must be fixed by the rational and usual means.

This value should have been obtained by the jury from a fair and reasonable analysis of all the evidence given by the witnesses on the trial.

So the Court is largely controlled in deciding this motion by the admitted sworn statements of Mr. Low, as to the value of this leasehold interest in this land at a time when there was no reason to inflate its value. Low must have known more of the value of this leasehold than any other witness called by defendant or by plaintiff, and courts will not permit interested parties to blow hot and cold according to their developed interest in a case at bar.

And again; it is not denied that within three years before the commencement of this case, the Dowsett lease which had then ten years to run was purchased outright by the defendant, including all rents fully paid up, for the sum of $20,000. This lease then and now covering, inclusive of the 561.2 acres in controversy, some 2900 acres of land, of which the defendant is now in possession under said lease and much of which is being cultivated.

There is no testimony that this land has ever produced any income, and that while 342 acres of the 561.2 has been cleared, it has never been cultivated to 'cane nor has any crop ever been produced upon it. And while it may be possible to raise cane on this land or part of it with plenty of water, yet it is shallow and much of it is adobe.

The testimony of the eight witnesses called for defendant as experts, as to the value of this leasehold interest, varied in amounts from $400,000 to $239,400. In the mind of the Court, these estimates were exaggerations and were greatly in excess of any value shown to be possessed by this leasehold interest by the party chiefly in interest, the defendant, through its Manager, Mr Low. They were mainly lumping estimates of the value of the property and apparently purely speculative, based upon what this land might possibly produce under given conditions not shown to exist; and from a careful examination of the testimony of at least four of these witnesses (Mr. Ahrens, Mr. Goodale, Mr. Renton and Mr. Meyers, all of whom were

plantation managers), it will be seen that in each instance a value is fixed upon this leasehold interest of 561.2 acres far in excess of the amount of the valuation approximately placed upon the lands of the plantations in which they were each managers and in some of them largely interested. These latter plantations had long been cropped with cane and are all producing incomes now, while no income has ever been produced from this land nor any cane grown thereon.

Neither the jury nor the Court is bound by the opinions of expert witnesses unless they are in harmony with the weight of the testimony; but may consider them in connection with all the other facts in evidence.

In view of all the circumstances, a new trial might possibly be properly had. As has been before stated, upon the rendition of the verdict in the case, a demand for a new trial was made by both counsel for plaintiff and defendant, neither of whom was satisfied with the verdict of the jury.

However, upon a careful consideration of the reasons advanced both for and against the motion made by the plaintiff, and after a lengthy examination of the whole of the record, including the testimony offered on behalf of both parties and of the able briefs filed herein, I am of the opinion that the amount of the verdict rendered by the jury is excessive and not in conformity with the weight of the evidence. This Court would not interpose its judgment in opposition to that of the jury by expressing an amount which in its opinion would be a just compensation for the property of the defendant. But if the jury had returned a verdict in any amount not to exceed seventy-five thousand dollars, this Court would have allowed a judgment to have been entered in accordance therewith.

It is therefore the judgment of the Court that if the defendant remits from the verdict rendered in its favor thirty thousand dollars, leaving the sum of seventy-five thousand dollars as full compensation for its damages of every kind and character in this case, then the motion made by the plaintiff for a new trial will

be denied. This election must be made by the defendant within three days from the date hereof by the filing with the Clerk of this Court a written consent to the modification of the verdict in that particular, and the entry of a judgment in accordance therewith. Otherwise a new trial will be granted.